IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Eastern Division
No. 4:21-CV-00045

| | |
|---|---|
| MITCHELL GARNET EVANS, Executor of the Estate of Sallie Copeland Evans, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT** |

Plaintiff, Mitchell Garnet Evans, Executor of the Estate of Sallie Copeland Evans ("Decedent"), brings this action against Defendant, United States of America, under the Federal Tort Claims Act ("FTCA"). This is an action for Decedent's wrongful death caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of the place where the acts and omissions occurred. Plaintiff alleges the following:

**Jurisdiction**

1. Under 28 U.S.C. § 1346(b)(1), this Court has jurisdiction of this action.

2. Under 28 U.S.C. § 2675(a), Plaintiff has exhausted his FTCA administrative remedies by first presenting his claim on Form SF-95 to the appropriate Federal agency and by then not filing this action until his claim was finally denied by that agency in writing and sent by certified mail. *See* Ex. A (denial letter with envelope copy).

1

**Venue**

3. Plaintiff is the Executor of the Estate of Decedent, who died in Halifax County, North Carolina, on or about April 24, 2018.

4. Plaintiff is a citizen and resident of Halifax County, North Carolina.

5. At the time of all the acts and omissions complained of in this Complaint, and at the time of Decedent's death, Plaintiff and Decedent were citizens and residents of Halifax County, North Carolina.

6. Halifax County, North Carolina, is within the Eastern District of North Carolina.

7. Venue in the Eastern District of North Carolina is proper under 28 U.S.C. § 1402(b).

**Facts**

8. Decedent was the grandmother of Isaiah Evans Ceaser ("Ceaser").

9. In March and April 2018, Ceaser was a member of the United States Marine Corps ("Marine Corps") and held the rank of lance corporal.

10. On or about March 30, 2018, Ceaser, without permission, left his duty station at Fort Benning, Georgia, where he and members of his unit were participating in a combat training school. Upon information and belief, the Marine Corps characterized Ceaser as an absentee, meaning he was absent without authority from his unit or other place of required duty. Upon leaving his unit, he left a note stating that he was going to end it all and kill himself. A classmate found Ceaser's note. Ceaser's commander, Marine Corps Captain Smith ("Smith"), participating in the Fort Benning training, was aware of the note.

11. On April 1, 2018, Sergeant Glascow of Ceaser's unit contacted local law enforcement officials in Nash County, North Carolina, where Cesar's girlfriend and other friends lived. Sergeant Glascow told law enforcement officials that Ceaser had gotten into trouble and left a note indicating that he was going to end it all, but before committing suicide, Ceaser wanted to visit his mother. *See* Ex. B (Communications Event Report). On or about April 1, 2018, Ceaser's mother, Samaria Evans ("Samaria"), was an inpatient at a medical facility in Halifax County, North Carolina.

12. After leaving Fort Benning, Ceaser traveled to North Carolina. The following people contacted Smith by telephone to advise that Ceaser had returned to North Carolina and needed to be picked up by the Marine Corps: Decedent; Plaintiff (son of Decedent and uncle of Ceaser); Plaintiff's wife, Monica Evans ("Monica"); and Decedent's sister, Mattie Copeland Parker.

13. Smith arranged for Ceaser to fly from Raleigh-Durham International Airport ("RDU") in North Carolina to Atlanta, Georgia, unsupervised, on or about April 5, 2018.

14. On April 5, 2018, Ceaser boarded his scheduled flight.

15. On or about April 10, 2018, Plaintiff, Monica, and Samaria learned that Ceaser had returned to North Carolina and was in Halifax County, North Carolina, at the home of his grandfather, William Evans.

16. On or about April 10, 2018, Decedent, Plaintiff, and Monica told Smith by telephone that Ceaser was in Halifax County, North Carolina and that they were concerned and afraid something could happen.

17. On or about April 10, 2018, Decedent asked Smith by telephone why the Marine Corps had not picked up Ceaser and asked Smith to have local North Carolina law enforcement officials pick up Ceaser, but Smith failed to do so.

18. On or about April 11, 2018, Decedent and Monica both spoke to Smith by telephone. Smith advised Decedent and Monica that Ceaser was being investigated for fraud. Smith said that he found several letters and notes from Ceaser that Smith considered disturbing. Smith stated that the letters and notes expressed Ceaser's intent of violence against Ceaser and others. Smith stated that he was very concerned because of these notes' contents and advised that Decedent should be careful if she came in contact with Ceaser.

19. On or about April 11, 2018, Decedent again by telephone requested Smith to have Ceaser detained. Smith advised her that the Marine Corps had already exhausted a large amount of resources trying to pick up Ceaser at the airport and would not commit to making any further effort to find and detain Ceaser.

20. On or about April 17, 2018, Plaintiff and Monica called Smith. Plaintiff and Monica again inquired why the Marine Corps had not picked up Ceaser. Plaintiff and Monica advised Smith that they had found grenade parts they believed Ceaser had acquired and that Ceaser was making posts on Facebook indicating that he had purchased guns. *See* Ex. C (Facebook posts). Decedent and Monica told Smith they were concerned because Ceaser was acting aggressive and was easily agitated. Decedent and Monica again specifically requested that the Marine Corps have Ceaser detained by local law enforcement officials. Decedent and Monica advised that they were concerned something would happen. Smith stated that this was concerning, and he would see what he could do, but that the Marine Corps had already

exhausted resources trying to have Ceaser picked up when Ceaser was supposed to fly to Georgia.

21. On or about April 22, 2018, Decedent and Plaintiff transported Ceaser to RDU, where they watched Ceaser board another flight to Atlanta, Georgia.

22. On April 22, 2018, by phone, Decedent and Plaintiff told Smith that Ceaser was on a plane to Atlanta, Georgia, and needed to be detained at the airport. Smith again stated that he did not have the resources to pick up Ceaser at the airport. Decedent and Plaintiff advised him that they and other family members had requested the Marine Corps numerous times to have the local law enforcement officials pick up Ceaser before something happened to him or someone else. Smith said he would see what he could do and would call them back. In a subsequent telephone call on April 22, 2018, Smith advised that he could not have Ceaser detained at the airport, and Ceaser would need to take a shuttle or a bus to the Marine Corps training location. Decedent again asked Smith why, since he was concerned about the suicide note, guns, and grenade parts, he could not just have local law enforcement officials detain Ceaser.

23. On April 23, 2018, Ceaser returned to Halifax County instead of returning to his Marine Corps unit at Fort Benning. Decedent again contacted Smith, who refused to take any action to have Ceaser detained and instructed Decedent to take Ceaser to Marine Corps Base Camp Lejeune in or near Jacksonville, North Carolina.

24. On or about April 23, 2018, Plaintiff saw Decedent crying and complaining that the Marine Corps was not taking action and instructed her to drive Ceaser to Camp Lejeune. Plaintiff then sent this text message to Smith: "We put Isaiah on a plane yesterday flew him back to

5

Case 4:21-cv-00045-FL   Document 1   Filed 04/08/21   Page 5 of 12

you once again And you didn't pick him up cause he's back here in NC at moms house She worried I'm worried Y'all need to pick his ASS up before something happens!!" *See* Ex. D (text message).

25. On or about April 24, 2018, Smith again instructed Decedent to drive Ceaser to Marine Corps Base Camp Lejeune.

26. While Decedent, at her home in Halifax County, North Carolina, was attempting to convince Ceaser to gather his belongings for the trip to Marine Corps Base Camp Lejeune, Ceaser shot Decedent in the back of the head with a 9 mm pistol, causing her death. Her dead body was discovered several days later.

27. Law enforcement officials arrested Ceaser at a hotel. At the time of the arrest, Ceaser possessed Decedent's car and credit card. Ceaser was also in possession explosive devices. Ceaser was charged with the first-degree murder of Decedent. Ceaser's case is pending in the Halifax County Superior Court.

28. Upon information and belief, neither Smith nor any other Marine Corps member took any action to have Ceaser apprehended and transported to a Marine Corps installation other than possibly making arrangements to pick him up at the Atlanta airport on or about April 5, 2018.

29. The Marine Corps is engaged in substantial activity within North Carolina and was engaged in substantial activity within North Carolina at all times referred to in this Complaint.

30. At all times referred to in this Complaint, the Marine Corps operated at least two major installations in North Carolina: Marine Corps Base Camp Lejeune and Marine Corps Air Station Cherry Point.

31. At all times referred to in this Complaint, the Marine Corps, at those two installations and elsewhere, had ample resources to promptly apprehend and detain Ceaser, regardless of his location in North Carolina, and transport him to a Marine Corps installation.

32. Upon information and belief, Smith reported to his superior Marine Corps officers in his chain of command ("his superiors") the information he received about the whereabouts and danger of Ceaser.

33. Upon information and belief, if Smith or any Marine Corps officer had requested Halifax County law enforcement officials to apprehend Ceaser and detain him for pickup by Marine Corps officials, Halifax County law enforcement officials would have done so.

## Claim: Wrongful Death

34. Plaintiff adopts by reference paragraphs 1 through 33 above.

35. At all times alleged in this Complaint, Smith and his superior officers were members of the Marine Corps and were employees of Defendant acting within the scope of their office or employment.

36. Smith and his superiors knew or should have known that Ceaser had violent propensities and posed an immediate risk of harm, including death, to himself, Decedent, and others.

37. It was reasonably foreseeable to Smith and his superiors that Ceaser would physically harm himself, Decedent, or others.

38. It was reasonably foreseeable to Smith and his superiors that Ceaser would kill himself, Decedent, or others.

39. Under the laws of North Carolina, where negligent and wrongful acts and omissions alleged in this Complaint occurred, the Marine Corps, through its employees in North Carolina and elsewhere, had the ability, opportunity, legal right, and legal duty to apprehend and control Ceaser at his North Carolina locations and to protect Decedent and others from him.

40. Under the laws of North Carolina, the Marine Corps, through its employees in North Carolina and elsewhere, assumed the legal right and legal duty to apprehend and control Ceaser at his North Carolina locations and to protect Decedent and others from him.

41. Under the laws of North Carolina, a special relationship between Ceaser and the Marine Corps gave rise to a legal right and legal duty of the Marine Corps, through its employees in North Carolina and elsewhere, to apprehend and control Ceaser at his North Carolina locations and to protect Decedent and others from him.

42. The Marine Corps had the ability to control Ceaser pursuant to legal authority independent of Ceaser's employment status as a Marine.

43. Because Ceaser was a danger to himself, Decedent, and others, the Marine Corps, through its employees, had the legal authority, independent of Ceaser's employment status as a Marine, to apprehend and control him at any location.

44. Because Ceaser was an absentee, the Marine Corps, through its law enforcement officials, commissioned officers, warrant officers, and noncommissioned officers, had the legal authority, independent of Ceaser's employment status as a Marine, to apprehend him at any location, military or civilian (with some limitations for private dwellings).

45. Because Ceaser was an absentee, civilian law enforcement authorities could have apprehended him if requested to do so by military authorities.

46. The Marine Corps, through its employees in North Carolina and elsewhere, breached its legal duties and, thus, was negligent, in:

    a. Failing repeatedly to apprehend and control Ceaser at his North Carolina locations, when the Marine Corps, through its employees, knew or should have known that he posed an immediate risk of harm, including death, to himself, Decedent, or others; and

    b. Failing repeatedly to request North Carolina law enforcement officials to apprehend Ceaser at his North Carolina locations and hold him for pickup by Marine Corps officials, when the Marine Corps, through its employees, knew or should have known that he posed an immediate risk of harm, including death, to himself, Decedent, or others.

47. The negligence of the Marine Corps, through its employees, was a proximate cause of Decedent's death.

48. All negligent and wrongful acts and omission alleged in this Complaint were by employees of the United States Government while acting within the scope of their office or employment.

49. In accordance with the laws of North Carolina, Defendant, if a private person, would be liable to Plaintiff for Decedent's wrongful death.

50. Under the FTCA, Defendant is liable to Plaintiff for compensatory damages for the wrongful death of Decedent caused by negligent and wrongful acts and omissions of the Marine Corps through its employees acting within the scope of their offices or employment.

51. Under North Carolina law, for Decedent's wrongful death, Plaintiff is entitled to recover:

    a. Expenses for care, treatment, and hospitalization (if any) incident to the injury resulting in Decedent's death;

    b. Compensation for pain and suffering of Decedent;

    c. The reasonable funeral expenses of Decedent; and

    d. The present monetary value of Decedent to the persons entitled to receive the damages recovered, including but not limited to the compensation for the loss of reasonably expected:

        i. Net income of Decedent;

        ii. Services, protection, care, and assistance of Decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered; and

iii. Society, companionship, comfort, guidance, kindly offices, and advice of Decedent to the persons entitled to the damages recovered.

## Demand for Relief

Wherefore, Plaintiff demands:

a. Judgment against Defendant for compensatory damages of three million dollars ($3,000,000);

b. Post-judgment interest and costs; and

c. Any further relief the Court deems appropriate.

This the 8th day of April 2021.

**MITCHELL GARNETT EVANS**

　　/s/ Robert C. Slaughter, III
Robert C. Slaughter, III
Slaughter Law Firm, PLLC
117 West Eden Street
Edenton, NC 27932
Phone: (252) 506-6284
Fax: (252)-689-8400
rslaughter@slaughterlaw.net
NC State Bar No.: 16515
*Attorney for Plaintiff*

/s/ Christopher R. Hedrick
Christopher R. Hedrick
Mason, Mason, Walker & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Phone: (757) 873-3909
Fax: (757) 873-1781
chedrick@masonwalker,com
NC State Bar No.: 19574
*Attorney for Plaintiff*