IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Eastern Division
No. 4:21-CV-00045-FL

| | |
|---|---|
| MITCHELL GARNET EVANS, Executor of the Estate of Sallie Copeland Evans, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) PLAINTIFF'S MEMORANDUM IN<br>) RESPONSE TO UNITED STATES'<br>) MOTION TO DISMISS |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>) |

## INTRODUCTION

Defendant has moved for dismissal of this Federal Torts Claim Act ("FTCA") case on two bases: lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court should deny Defendant's motion to dismiss.

## NATURE OF CASE

Plaintiff seeks money damages for the wrongful death of his mother, Sallie Copeland Evans ("the decedent"), who was shot and killed by her grandson Isaiah Evans Ceaser ("Ceaser"), a member of the United States Marine Corps ("Marine Corps"). In his Amended Complaint, Plaintiff alleges that the decedent's death was caused by the negligence of Marine Corps members while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of the State of North Carolina. Plaintiff alleges that a proximate cause of the decedent's death was the negligence of Marine Corps members in their acts and omissions in

1

response to requests by the decedent, Plaintiff, and others for protection from Ceaser, who the Marine Corps members knew or should have known was highly dangerous. The final act of Marine Corps negligence that Plaintiff alleges was instructing the decedent to drive Ceaser to Marine Corps Base Camp Lejeune. Ceaser shot the decedent while she was trying to convince him to take that trip with her.

## FACTS

Plaintiff adopts by reference the Facts section of United States' Memorandum in Support of Motion to Dismiss (DE 19 at pp. 2–4), which is an accurate statement of the facts.

## ARGUMENT

**I. Standards of Review**

Plaintiff agrees with the standards of review stated in the Argument section of United States' Memorandum in Support of Motion to Dismiss (DE 19 at pp. 5–6).

**II. Rule 12(b)(1)**

Defendant moves the Court to dismiss this action under Rule 12(b)(1) on the ground that Plaintiff's action is barred by 28 U.S.C. § 2680(h), under which the provisions of the FTCA do not apply to claims arising out of assaults or batteries. This exception does not apply to all claims arising out of assaults or batteries; it applies only to claims arising out of assaults or batteries by federal employees. *Sheridan v. United States*, 487 U.S. 392, 400 (1988). And the exception does not apply to all FTCA claims in which harm was caused by an assault or battery by a federal employee. The negligence of other federal employees who allow a foreseeable assault or battery by a federal employee to occur can furnish a basis for FTCA liability that is entirely independent of the assailant's employment status. *Id*. at 401.

In *Sheridan*, a drunk off-duty naval medical aide named Carr fired rifle shots into an

automobile near a naval hospital. The FTCA action was based on the negligence of naval corpsmen in allowing Carr to leave the hospital while possessing a loaded rifle. The Court found it clear that Carr's being a federal employee instead of a hospital patient or visitor should not provide a basis for protecting the government from liability. *Id*. at 402. Thus, the Court held that "Because neither Carr's employment status nor his state of mind has any bearing on the basis for petitioners' claim for money damages, the intentional tort exception to the FTCA is not applicable in this case." *Id*. at 403.

Defendant relies extensively on *Durden v. United States*, 736 F.3d 296 (4th Cir. 2013) in its Rule 12(b)(1) and Rule 12(b)(6) arguments. According to Defendant, the *Durden* fact pattern was "substantially similar" to that presented in this case. (DE 19 at p. 10). In *Durden*, an Army member named Pernell raped the plaintiff, Maria Durden, in her Fort Bragg, North Carolina home. Durden brought an FTCA action based on the Army's negligence. In her complaint, she alleged that the Army was aware that Pernell posed a safety risk, had a duty to protect her, and breached that duty. The government moved for dismissal for lack of subject matter jurisdiction and for failure to state a claim. The government asserted that the Army breached no duty to Durden under North Carolina law and that the claim was barred by the FTCA's intentional tort exception. Holding that Durden's negligence theories failed and that the intentional tort exception applied, the district court granted the motion to dismiss. The court of appeals agreed that Durden's negligence theories failed and affirmed the dismissal, but the court held that the district court erred in dismissing the case under the alternative basis of the intentional tort exception.[1]

---

[1] The district court dismissed the case for lack of subject matter jurisdiction, The court of appeals found that the district court's statement that the dismissal was for lack of subject matter jurisdiction was technically incorrect and that the district court considered the negligence issue as if it were the basis of a Rule 12(b)(6) motion that had been converted

In *Durden*, the court of appeals noted that the district court held that Pernell's government employee status was a but-for element of Durden's negligence claim, so her claim was barred. *Durden* at 308-09. The district court reasoned that since the Army's knowledge of Pernell's criminal propensities came solely from his government employment, the Army's breach of any duty to Durden was not independent of the employment. *Id.* at 309. The court of appeals, though, in finding that the district court's but-for reasoning was flawed, stated:

> The same could be said, however, about the corpsmen's knowledge
> of the intoxicated tortfeasor in Sheridan: presumably, the corpsmen
> alleged to have acted negligently would not have been present in
> the naval hospital that night —and thus would not have gained knowledge
> of the drunken tortfeasor and put themselves in a position to be negligent
> in the first instance—were it not for their government employment.

*Id.*

*Lumsden v. United States*, 555 F. Supp. 2d 580 (E.D.N.C. 2008) is discussed in *Durden*. In *Lumsden*, the FTCA complaint alleged that Marine Corps agents or officers impounded Marine Corps Private Lucas Borges' car, which contained cylinders of government ether, knowing that he had acquired and inhaled government ether on several occasions. Several days later, Marine Corps officers released to Borges the car, still containing the cylinders of ether. Then Borges became intoxicated on ether and drove in the wrong lane of a highway, causing a head-on collision with another car. One person in the other car was killed and others were injured. Borges was convicted in state court of second-degree murder, four counts of assault with a deadly weapon, and driving while impaired.

---

into a summary judgment motion. So the court of appeals applied the standard for granting summary judgment: whether the government was entitled to judgment as a matter of law.

The *Lumsden* complaint alleged negligence by the government officers and agents who released to Borges the car containing ether, knowing of his propensity to abuse ether and become dangerously intoxicated. The government moved to dismiss the complaint under Rule 12(b)(1) on the ground of the intentional tort exception and under Rule 12(b)(6) on the ground that the complaint did not state a claim. The district court denied the motion to dismiss.

On the Rule 12(b)(1) issue, the court in *Lumsden* found that the complaint could not be reasonably read to allege that the plaintiffs were seeking relief arising from an intentional assault by Borges. *Id.* at 584. The court further found that Borges's government employment was irrelevant to the plaintiff's liability theory. *Id.* Quoting *Sheridan*, the court held that because neither Borges's employment status nor his state of mind had any bearing on the claim for money damages, the FTCA intentional tort exception was not applicable. *Lumsden* at 585. The court dismissed the Rule 12(b)(1) motion to dismiss as baseless. *Id*.

In the present case, Plaintiff's action is purely for money damages for negligence. In the Amended Complaint, he alleges that Marine Corps members, particularly Ceaser's commander, Captain Smith ("Smith"), were negligent in failing to protect the decedent from Ceaser in response to numerous requests made by her, Plaintiff, and others for help. As in *Sheridan*, *Durden*, and *Lumsden*, Ceaser's employment status had no bearing on Plaintiff's claim for money damages.

According to Plaintiff's Amended Complaint, the Marine Corps' negligence in response to the repeated cries for help for protection from the dangerous Ceaser reached a high point of disgrace in the final days of the decedent's life. By then, Smith knew full well that Ceaser posed an immediate risk of harm to the decedent and others. (DE 16 at ¶¶ 10, 16, 18, 20, 22). He had even expressed his concern to the decedent and Plaintiff's wife. (DE 16 at ¶ 18). The decedent

5

and members of her family simply wanted the Marine Corps to pick up Ceaser or have him detained by local law enforcement officials, either of which the Marine Corps could have readily done, but failed to do. (DE 16 at ¶¶ 12, 17, 19, 20, 22, 31, 33). On April 23, 2018, Ceaser was back in Halifax County, North Carolina, after boarding a plane at Raleigh-Durham International Airport ("RDU") to fly to Atlanta the day before, supposedly to return to his military duty station. (DE 16 at ¶¶ 22, 23). That day the decedent again contacted Smith, and Smith again refused to take any action to have Ceaser detained. (DE 16 at ¶ 23). Instead, Smith instructed the decedent to take Ceaser to Camp Lejeune in or near Jacksonville, North Carolina. (DE 16 at ¶ 23). On or about April 23, 2018, Plaintiff saw the decedent crying, and she was complaining that Smith had instructed her to drive Ceaser to Camp Lejeune. (DE 16 at ¶ 24). Plaintiff then sent this text message to Smith: "We put Isaiah on a plane yesterday flew him back to you once again And you didn't pick him up cause he's back here in NC at moms house She worried I'm worried Y'all need to pick his ASS up before something happens!!" (DE 16 at ¶ 24). On or about April 24, 2018, Smith again instructed the decedent to drive Ceaser to Camp Lejeune. (DE 16 at ¶ 25). Then, while the decedent was with Ceaser at her Halifax County home attempting to convince him to gather his belongings for the trip to Camp Lejeune, he shot her in the head with a 9 mm pistol, killing her. (DE 16 at ¶ 26).

      The Amended Complaint alleges shockingly poor judgment by Smith. Knowing Ceaser posed a great danger to the decedent, Smith instructed her to drive him to Camp Lejeune. No reasonable person would have given Ceaser's grandmother that instruction under the circumstances. Smith knew Ceaser was dangerous and had to have known he would not want to take that trip. Foreseeably, Ceaser resisted the trip by committing a violent act.

6

Case 4:21-cv-00045-FL   Document 22   Filed 10/25/21   Page 6 of 13

Plaintiff's action does not depend on Ceaser's status as a government employee any more than did the actions in *Sheridan*, *Durden*, and *Lumsden.* At the heart of Plaintiff's action is that the immediate cause of the decedent's death was Smith's instructing her to get the dangerous Ceaser into a car for a trip to a location to which, as shown by his actions, he did not want to go. That would have been negligent instructions whether Ceaser was a Marine or not.

Defendant makes the type of but-for argument rejected by the courts: "If Ceaser's employment status were eliminated, there would be no other reason for Decedent or her family to ask the USMC to detain Ceaser, for Ceaser to go to Camp Lejeune, or to even involve the Marine Corps." (DE 19 at p. 8). But that sort of argument was made and rejected in *Sheridan*, *Durden*, and *Lumsden.* In *Sheridan*, but-for Carr's employment status, he would not have been at the hospital. In *Durden*, but for Pernell's employment status as a soldier, the Army would not have had any involvement with him. In *Lumsden*, but-for Borges' employment status as a Marine, he would not have had government ether, and the Marine Corps would not have had any involvement with his car. The court in *Lumsden* found that Borges's government employment was irrelevant to the plaintiff's liability theory. Since that was true in *Lumsden*, it is surely also true in this case.

Because the intentional tort exception to the FTCA is inapplicable in this case, the Court should deny Defendant's motion to dismiss under Rule 12(b)(1).

## III. Rule 12(b)(6)

Defendant moves the Court to dismiss this action under Rule 12(b)(6) for failure to state a claim. Defendant argues, correctly, that this issue is controlled by North Carolina law and that under North Carolina law, generally a party has no duty to protect another from a third party. As stated by Defendant, recognized exceptions are where (1) a special relationship creates a

7

responsibility to protect another, and (2) a party assumes a duty to protect another from a third party. Without conceding that the first exception is inapplicable, Plaintiff will address only the second exception, which is clearly applicable.

North Carolina "law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence." *Council v. Dickerson's Inc.*, 233 N.C. 472, 474, 64 S.E.2d 551, 553 (1951).

> As a general proposition of the law of torts, it is settled that, under certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking.[2]

*Quail Hollow East Condominium Asso. v. Donald J. Scholz Co.*, 47 N.C. App. 518, 522, 268 S.E.2d 12, 15 (1980).

The allegations in Plaintiff's Amended Complaint show that Smith entered upon an active course of conduct in his dealings with the decedent and her family. After the decedent and other family members advised Smith that Ceaser had returned to North Carolina, Smith arranged for Ceaser to fly from RDU to Atlanta, unsupervised, on or about April 5, 2018. (DE 16 at ¶¶ 12, 13). On or about April 11, 2018, Smith told the decedent and Plaintiff's wife that he found disturbing letters and notes from Ceaser in which he expressed intent to harm himself and others, and Smith stated he was very concerned about the notes' content and advised that the decedent should be careful if she came in contact with Ceaser. (DE 16 at ¶ 18). Finally and fatally, Smith twice instructed the decedent to take Ceaser to Camp Lejeune. (DE 16 at ¶¶ 23, 25).

---

[2] In recognizing the assumption of duty exception, *Durden* quotes from this sentence.

In his Amended Complaint, Plaintiff has alleged that, under North Carolina law, the Marine Corps assumed the legal right and duty to apprehend and control Ceaser and protect the decedent and others from him. (DE 16 at ¶ 40). Plaintiff has also alleged that, under North Carolina law, by instructing the decedent to drive or take Ceaser to Camp Lejeune, Smith voluntarily assumed a legal duty to protect the decedent from Ceaser. (DE 16 at ¶ 41). Furthermore, Plaintiff has alleged that when Smith entered upon the active course of conduct of instructing the decedent to drive or take the decedent to Camp Lejeune, North Carolina law imposed upon him a positive duty to exercise ordinary care to protect the decedent from harm. (DE 16 at ¶ 42).

Plaintiff cannot prevail in this FTCA action unless the United States, if a private person, would be liable to Plaintiff in accordance with North Carolina law. 28 U.S.C. § 2672. Plaintiff has alleged that to be true (DE 16 at ¶ 51) and has alleged specific facts supporting that proposition.

While acknowledging that "North Carolina recognizes assumption of a duty to protect" (DE 19 at p. 13), Defendant argues that "As pled, the USMC did not have control over Ceaser during the time relevant to the complaint." (DE 19 at p. 14). But that is not the pertinent issue. The pertinent issue is whether the Marine Corps (or Smith in particular), if a private person, would be liable to Plaintiff under North Carolina law in these circumstances. If, under North Carolina law, the Marine Corps or Smith voluntarily assumed a duty to protect the decedent, and a breach of that duty proximately caused the decedent's death, then Defendant is liable for the decedent's wrongful death. Plaintiff has pled, among other allegations, that the Marine Corps was negligent in instructing the decedent to drive or take Ceaser to Camp Lejeune when the Marine Corps knew or should have known that he posed an immediate risk of harm, including

9

death, to himself, the decedent, or others (DE 16 at ¶ 48c) and that the negligence of the Marine Corps was a proximate cause of the decedents' death (DE 16 at ¶ 49). According to the allegations of the Amended Complaint, the direct result of those instructions was the decedent's death. The allegations of the Amended Complaint would be sufficient to state a claim under North Carolina law if the Marine Corps or Smith were a private person. Plaintiff has alleged that the Marine Corps had the ability and legal authority to control Ceaser. (DE 16 at ¶¶ 44, 45). The lack of an allegation that the Marine Corps had actual control over Ceaser "during the time relevant to the complaint" has no legal consequence.

Defendant also argues that Plaintiff makes no allegation that the instruction to take Ceaser to Camp Lejeune was necessary for the protection of Ceaser's family, particularly the decedent. (DE 19 at p. 14). Defendant misses the point, which is that the instruction was not only unnecessary for the protection of anyone, but was also ill-advised, negligent, and a proximate cause of the decedent's death.

Defendant further argues that *Durden* "supports the conclusion that the government did not assume a duty here." (DE 19 at p. 15). Defendant states that the court in *Durden* noted that at the time of the rape, the Army did not know of several other burglaries and sexual assaults in the prior year and that if the Army had known that Pernell was a serial offender, the Army may have had a duty to control him upon his release from civilian confinement. (DE 19 at pp. 15–16). If anything, *Durden* supports Plaintiff's position. Smith had notice of imminent danger when he received this text: "We put Isaiah on a plane yesterday flew him back to you once again And you didn't pick him up cause he's back here in NC at moms house She worried I'm worried Y'all need to pick his ASS up before something happens!!" Under *Durden*, that text, combined with

what Smith already knew about Ceaser's dangerous propensities, was sufficient to give rise to a duty of the Marine Corps and Smith to protect the decedent.

Defendant finally argues that "even if Plaintiff could establish the government's instruction to the family to take Cesar to Camp Lejeune gave rise to a duty to protect Decedent under North Carolina law, such a duty would not be independent of Ceaser's employment status." (DE 19 at p. 16). That argument fails for the same reason it fails in connection with the government's Rule 12(b)(1) argument. Plaintiff's action simply does not depend on Ceaser's status as a government employee.

Because Plaintiff has stated a valid FTCA claim, the Court should deny Defendant's motion to dismiss under Rule 12(b)(6).

## CONCLUSION

Taking the allegations of the Amended Complaint as true, the Court should find that Plaintiff's FTCA claim does not arise out of an assault or battery and, thus, is not barred by the intentional tort exception to the FTCA under 28 U.S.C. § 2680(h). Therefore, the Court should deny Defendant's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.

The Court, taking the allegations of the Amended Complaint as true, should find that (1) Smith, acting within the scope of his government employment, entered upon an active course of conduct that imposed upon him the positive duty under North Carolina law to exercise ordinary care to protect the decedent from harm by Ceaser; (2) Smith breached that duty; (3) Smith's breach of that duty was a proximate cause of the decedent's death; and (4) Smith, if a private person, would be liable under North Carolina law to Plaintiff for the decedent's wrongful death. Because Plaintiff has stated an FTCA claim upon which relief can be granted, the Court should deny Defendant's motion to dismiss under Rule 12(b)(6).

This the 25th day of October 2021.

**MITCHELL GARNETT EVANS**

    /s/ Robert C. Slaughter, III
Robert C. Slaughter, III
Slaughter & Lupton Law, PLLC
117 West Eden Street
Edenton, NC 27932
Phone: (252) 439-0700
Fax: (252)-689-8400
rslaughter@slaughterlupton.com
NC State Bar No.: 16515
*Attorney for Plaintiff*

    /s/ Christopher R. Hedrick
Christopher R. Hedrick
Mason, Mason, Walker & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Phone: (757) 873-3909
Fax: (757) 873-1781
chedrick@masonwalker,com
NC State Bar No.: 19574
*Attorney for Plaintiff*

**Certificate of Service**

I certify that on October 25, 2021, I served this document electronically, using the CM/ECF system, upon:

    Sharon C. Wilson
    Attorney for Defendant
    United States Attorney's Office
    Wells Fargo Building
    150 Fayetteville Street, Suite 2100
    Raleigh, NC 27601

    /s/ Christopher R. Hedrick
Christopher R. Hedrick
Mason, Mason, Walker & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Phone: (757) 873-3909

Fax: (757) 873-1781
chedrick@masonwalker,com
NC State Bar No.: 19574
*Attorney for Plaintiff*