IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-45-FL

| | | |
|---|---|---|
| MITCHELL GARNET EVANS, Executor of the Estate of Sallie Copeland Evans, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (DE 18). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the court grant the motion. (DE 27). Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted.

### STATEMENT OF THE CASE

Plaintiff commenced this action April 8, 2021, asserting that defendant is liable for the wrongful death of plaintiff's mother, Sallie Copeland Evans (the "decedent"), at the hands of Isaiah Evans Ceaser ("Ceaser"), plaintiff's nephew and decedent's grandson, based on negligent and wrongful acts and omissions by defendant's employees, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Plaintiff seeks compensatory damages and costs.

Plaintiff attaches to his operative, amended complaint[1] 1) a December 8, 2020, letter from the United States Department of the Navy denying plaintiff's administrative FTCA claim, 2) a "Communication Event Report" summarizing a conversation between law enforcement and a United States Marine Corps ("Marine Corps") sergeant from Fort Benning, Georgia, and 3) screenshots of text messages between a "Captain Smith" and plaintiff. Defendant moves to dismiss the complaint on the bases that the court lacks subject matter jurisdiction over plaintiff's claim and the complaint fails to state a claim upon which relief can be granted.

After referral, the magistrate judge heard argument from the parties and entered M&R thereafter. The magistrate judge recommends that defendant's motion be granted on the basis of the court's lack of subject matter jurisdiction. The magistrate judge did not reach defendant's Rule 12(b)(6) argument. Plaintiff objects specifically to the magistrate judge's conclusion and analysis regarding the court's subject matter jurisdiction.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

> In March 2018, Isaiah Ceaser was stationed at Fort Benning in Georgia to attend combat training school with his unit. Am. Compl. ¶¶ 9, 10. At the end of the month, he left Georgia without permission and made his way to North Carolina. Id. ¶¶ 10, 12. Among the things that Ceaser left behind at Fort Benning was "a note stating that he was going to end it all and kill himself." Id. ¶ 10. Ceaser's commanding officer, Captain Smith, ["Smith"] learned about the note. Id. ¶ 10.
>
> In response, a sergeant in Ceaser's unit contacted law enforcement in Nash County, North Carolina where some of Ceaser's acquaintances lived. Id. He shared that "Ceaser had gotten into trouble and left a note indicating that he was going to end it all[.]" Id. ¶ 11. The note also stated that Ceaser wanted to visit his mother who was at an inpatient medical facility in Halifax County, North Carolina. Id.
>
> Several of Ceaser's family members called Smith to let him know that Ceaser was in North Carolina "and needed to be picked up by the Marine Corps[.]" Id. ¶ 12. In response, Smith arranged for Ceaser to fly from North Carolina back to

---

[1] Hereinafter, all references to the complaint in the text or "Compl." in citations are to plaintiff's amended complaint. (Am. Compl. (DE 16)).

Georgia. Id. ¶ 13. Ceaser boarded the flight, but within a few days he returned to his grandfather's home in Halifax County. Id. ¶¶ 14, 15.

Upon Ceaser's return to the area, his family members again reached out to Smith. Id. ¶ 16. They told him that Ceaser was in Halifax County and that they "were concerned and afraid something could happen." Id. ¶ 16. [The decedent,] Sallie[,] asked Smith why the Marine Corps had not apprehended Ceaser and asked if Smith could have local law enforcement pick Ceaser up. Id. ¶ 17.

Sallie, along with her daughter-in-law, spoke to Smith again the next day. Smith shared that Ceaser was under investigation for fraud. Id. ¶ 18. He also told them he had found several "disturbing" letters and notes from Ceaser. Id. These writings revealed that Ceaser intended to harm himself and others. Id. Smith said that he was "very concerned" by the notes and advised Sallie to be careful around Ceaser. Id.

That same day, Sallie again reached out to Smith. Id. ¶ 19. She asked "Smith to have Ceaser detained." Id. He said that the Marine Corps had exhausted substantial resources trying to pick Ceaser up at the airport and would not commit to doing anything else. Id. ¶ 19.

A few days passed and Ceaser's family again called Smith to ask why Ceaser had not yet been picked up. Id. ¶ 20. They told him that they had found grenade parts that they believed belonged to Ceaser. Id. They also shared that Ceaser was acting aggressively, was easily agitated, and was posting on social media that he had purchased guns. Id. Despite acknowledging that these were concerning developments and saying that he "would see what he could do," Smith would not commit to doing anything in particular. Id.

Then, about three weeks after he arrived in North Carolina, Ceaser's family once again took him to the airport so he could fly back to Georgia. Id. ¶ 21. Ceaser boarded the flight and his family then called Smith. Id. ¶¶ 21, 22. They told him that Ceaser was on a plane to Atlanta and would need to be picked up at the airport. Id. ¶ 22. Smith eventually responded that "he could not have Ceaser detained at the airport, and Ceaser would need to" make his own way back to Fort Benning. Id.

But rather than make his way to Fort Benning, Ceaser made his way back to North Carolina the next day. Id. ¶ 23. Sallie once again contacted Smith and expressed her frustration with the situation and her concern that something bad would happen. Id.

In response, Smith told Sallie to take Ceaser to Camp Lejeune. Id. As Sallie was trying to persuade Ceaser to pack up and go with her to Camp Lejeune, he fatally shot her. Id. ¶ 26.

(M&R (DE 27) at 2-4).

# COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed.  28 U.S.C. § 636(b).  The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).[2]  Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction.  Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Where a defendant raises a "facial challenge[] to [subject matter jurisdiction] that do[es] not dispute the jurisdictional facts alleged in the complaint,"  the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge."  Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

---

[2]  Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

4

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

In the instant motion to dismiss, the government asserts that plaintiff's claim falls within the FTCA's exception for "claim[s] arising out of assault[ or] battery." 28 U.S.C. § 2680(h). Plaintiff argues that, pursuant to Sheridan v. United States, 487 U.S. 392 (1988), such exception does not apply because his claim of negligence by the United States furnishes a basis for governmental liability that is entirely independent of Ceaser's federal employment status. The magistrate judge cogently and thoroughly determined in the M&R that plaintiff's argument fails as a matter of law, even accepting the facts alleged as true. Upon de novo review, the court finds the determination by the magistrate judge to be correct.

The court separately addresses here plaintiff's specific objections: 1) that the M&R's conclusion is incorrect because Smith's instructions to decedent establish a duty to her independent of Ceaser's employment status; 2) that the M&R relied on the type of but-for rationale disapproved by the court in Durden v. United States, 736 F.3d 308 (4th Cir. 2013); and 3) that LaFrancis v. United States, 66. F. Supp. 2d 335 (D. Conn. 1999), which the M&R cites, is distinguishable. None merit concluding the magistrate judge's recommendation to dismiss plaintiff's complaint is erroneous.

5

The FTCA allows complainants to hold the United States liable for certain tort claims "in the same manner and to the same extent as a private individual," 28 U.S.C. § 2674, including "for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his [or her] office or employment." Id. § 1346(b)(1). This is a limited waiver of the United States' general "immun[ity] from suit." Clendening v. United States, 19 F.4th 421, 426 (4th Cir. 2021); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (explaining that "[s]overeign immunity is jurisdictional in nature" and thus "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit"). "[T]hat waiver is curtailed by several exceptions," which "plaintiff bears the burden of showing" do not "apply to [his or her] particular claim." Clendening, 19 F.4th at 426.

One such exception is for "[a]ny claim arising out of assault, battery," or a number of other enumerated torts, 28 U.S.C. § 2680(h), sometimes referred to as the "intentional-tort exception." Durden, 736 F.3d at 308. However, "in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." Sheridan, 487 U.S. at 398. One such situation, identified in Sheridan, is where the "negligence of other Government employees who allowed a foreseeable assault and battery to occur . . . furnish[es] a basis for Government liability that is entirely independent of [the tortfeasor's] employment status." Id. at 401; see also id. ("[I]n a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the assailant] was on a federal payroll.").

The United States Court of Appeals for the Fourth Circuit has construed Sheridan as standing for the principle that "the government's ability (i.e., legal duty) to control a tortfeasor

6

must be independent of the tortfeasor's status as a government employee," such as in Sheridan, where the "tortfeasor's status as a government employee was wholly irrelevant to imposing liability on the government for the [other government employees'] negligence." Durden, 736 F.3d at 308-09 (emphasis added). The facts of Sheridan, itself, clarify this principle. In that case, after encountering a severely inebriated servicemember in a naval hospital, a group of Navy corpsmen attempted to take him to the emergency room of that hospital. Sheridan, 487 U.S. at 394-95. He resisted and, in the process, revealed the barrel of a rifle, causing the corpsmen to flee, although they failed to inform any authorities. Id. at 395. The drunk serviceman proceeded to fire shots at plaintiffs' car, injuring them and their property. Id.

The Supreme Court explained that plaintiffs' suit was not barred by § 2680(h), despite plaintiffs' injuries being caused by the drunk serviceman's battery, because their claim was for negligence based not on the serviceman's employment status but the corpsmen and the government's negligence in preventing "a foreseeable assault and battery." Id. at 401. The Court clarified that, independent of any duty related to the shooter's employment, the corpsmen and the government had undertaken an independent duty of care by "[b]y voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm" as well as "by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed," through which specifically "the Government assumed responsibility to perform its good Samaritan task in a careful manner." Id. "Because neither [the shooter's] employment status nor his state of mind ha[d] any bearing on the basis for [plaintiffs'] claim for money damages, the intentional tort exception to the FTCA [was] not applicable." Id. at 403.

7

Plaintiff contends the same is true of his wrongful death claim brought on behalf of decedent based on the negligence of the government, specifically Smith, in failing to protect decedent from harm. Plaintiff analogizes Smith's direction to decedent to drive Ceaser to Camp Lejeune to the naval corpsmen's voluntarily undertaking to provide care for the plainly dangerous, drunken serviceman in Sheridan. The analogy is unavailing.

Plaintiff's claim of negligence by Smith related to Ceaser's assault and battery is not "entirely independent" of Ceaser's federal employment, Sheridan, 487 U.S. at 401, nor can it be said that Ceaser's "status as a government employee [is] wholly irrelevant to imposing liability" possibly on the government for Smith's alleged negligence. Durden, 736 F.3d at 309. On the facts pleaded, "[t]he government's ability . . . to control [Ceaser]" was not "independent of [his] status as a government employee," id.; rather, it is this exact ability to control Ceaser that decedent relied upon in requesting help from Smith as spurred his direction to her to drive Ceaser to Camp Lejeune, into the custody of the Marine Corps, Ceaser's employer. (See Compl. ¶¶ 17, 19-20, 23).

Plaintiff's argument that Smith's direction to decedent to drive Ceaser to Camp Lejeune creates a duty entirely independent of Ceaser's employment by the Marine Corps ignores the alleged events preceding that direction and the ultimate goal of Smith's direction and decedent's attempts: delivering Ceaser back into the control of his employer, the Marine Corps. Unlike Sheridan, there would be no basis for "liability" to "attach if [Ceaser] had been an unemployed civilian" in the home of decedent. Sheridan, 487 U.S. at 401; see also Durden, 736 F.3d at 305 ("The FTCA is clear . . . that the government is liable only under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Thus, setting aside the Army's ability to control [the tortfeasor] that attached solely pursuant to his employment status as a soldier, the Army must have had some

8

other legal authority to control him."). Plaintiff points to no authority that Smith "under[took] to render services to [decedent]" by giving her that direction, in the way the Army was alleged to have in Durden "by undertaking the task of monitoring and controlling [a tortfeasor] following his release from civilian confinement." 736 F.3d at 305. Finally, plaintiff fails to point to alleged facts comparable to the other factors weighed by the Sheridan Court in concluding "the Government [had] assumed responsibility," such as adopting related regulations and affirmative reporting rules. 487 U.S. at 401.

Further, this conclusion does not require reliance on any rationale disapproved of in Durden. In its own words, the Fourth Circuit held, among other things, that "knowledge of the tortfeasor's propensity for violence or criminal history gained as a result of [the tortfeasor's status as a government employee] does not, per se, nullify an FTCA claim." Durden, 736 F.3d at 309. Durden does not jettison the use wholesale of causal reasoning in analyzing whether a plaintiff's FTCA claim is barred by § 2680(h). Moreover, the court here does not grant the motion to dismiss plaintiff's FTCA claim because Smith's knowledge of Ceaser's propensity for violence was gained as a result of Ceaser's status as a member of the Marine Corps, but rather because plaintiff does not plausibly allege that Ceaser's employment status "ha[d] nothing to do with the [alleged] basis for imposing liability on the Government." Sheridan, 487 U.S. at 402.

To the extent plaintiff faults the M&R's reliance on LaFrancis v. United States, 66. F. Supp. 2d 335 (D. Conn. 1999), such objection is of no moment where analysis independent from that authority leads to the same result. Further, plaintiff's emphasis on Lumsden v. United States, 555 F. Supp. 2d 580 (E.D.N.C. 2008), as the most helpful exemplary analysis is misplaced. In that case, the government, through its agents, "delivered [the tortfeasor's] car keys and the ether," through which he had previously become intoxicated, to the tortfeasor. Id. at 584-85. Liability

9

for this type of conduct was based not on the tortfeasor's employment status but rather the government negligently equipping the tortfeasor with the means to cause harm (which he did by driving intoxicated into the oncoming lane in which the Lumsden plaintiffs were driving).

In sum, plaintiff's objections to the M&R do not provide a basis for rejecting the magistrate judge's recommendation to dismiss plaintiff's FTCA claim for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing, defendant's motion (DE 18) is GRANTED. This action is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of August, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge